## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 16 2016, 8:10 am

*Kevin S. Smith*

CLERK
of the supreme court,
court of appeals and
tax court

| ATTORNEY FOR APPELLANT | ATTORNEY FOR APPELLEE |
|---|---|
| Michael W. Bosch | Cheyenne N. Riker |
| Highland, Indiana | Millbranth & Bush, LLC |
| | Valparaiso, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Angelo Cappas, <br> *Appellant-Plaintiff*, <br><br> v. <br><br> ThruPort Intermodal, LLC, <br> *Appellee-Defendant*. | February 16, 2016 <br><br> Court of Appeals Case No. 45A03-1508-PL-1242 <br><br> Appeal from the Lake Superior Court <br><br> The Honorable William E. Davis, Judge <br><br> Trial Court Cause No. 45D05-1409-PL-93 |

**Brown, Judge.**

[1]     Angelo Cappas appeals from the entry of summary judgment in favor of ThruPort Intermodal, LLC ("ThruPort") and against him. We affirm.

*Facts and Procedural History*

[2]     ThruPort is an Indiana limited liability company. On October 31, 2013, at which time Cappas had a membership interest in the company, ThruPort promised to repay Cappas the principal sum of $170,000 pursuant to a promissory note which stated that the principal plus accrued interest would be due and payable on or before March 1, 2014, and that the note may be extended up to sixty days by agreement of the parties.

[3]     At some point, Cappas sent a letter to J. Justin Murphy, CEO of ThruPort, which stated:

> I am writing to confirm that I am willing to withdraw as a member of the company and to surrender my 4400 units of membership back to the company to facilitate locating alternative financing for the project. Pursuant to Section 10.01(E)(4), I represent and warranty [sic] that the Disposition is made in accordance with all applicable laws and regulations (including security laws).
>
> I understand that a Special Meeting of the Members may be called in the immediate future concerning same.

Appellant's Appendix at 101.[1]

---

[1] This letter is undated. In his affidavit, Murphy states he received the letter on April 13, 2014, the date of the special meeting of members.

[4]     On April 13, 2014, a special meeting of the members of ThruPort was held at which the members were present or represented. At the meeting, the members voted to approve the transfer of Cappas's units of membership back to the company and to accept his resignation. The minutes of the special meeting state:

> The special meeting of the members of ThruPort Intermodal, LLC an Indiana Limited Liability Company was called to order on Sunday, April 13, 2014 at 5:30 p.m. (C.S.T.) . . . by the Manager, J. Justin Murphy. Also present was Robert Parks, Member, Gino Burelli, Member, Angelo Cappas, Member, Tom Fife, Member, by Proxy (Angelo Cappas), and J. Justin Murphy, Member.
>
> J. Justin Murphy then reported that the special meeting had been called pursuant to a notice of meeting and/or waiver of notice thereof in accordance with the operating agreement. It was ordered that a copy of the notice and waiver of notice be appended to the minutes of the meeting. The members then unanimously elected J. Justin Murphy to act as Chairman of the meeting.
>
> Murphy called the meeting to order and advised the members that Angelo Cappas reported on March 17, 2014 that he was unable to provide project funding. Further, that Angelo Cappas was willing to withdraw as a Member of the Company and to surrender all of his units of membership back to the company for such reason in order to facilitate locating alternative financing. Notice by Angelo Cappas that he is willing to relinquish and transfer his units of membership back to the Company subject to approval of the remaining members. Discussion followed.
>
> Motion made by Robert Parks to approve Angelo Cappas' transfer of units of membership back to the Company and accept his resignation. Seconded by Gino Burelli. No questions on the motion. The vote was called. Yes: Angelo Cappas, Robert

Parks, Gino Burelli, Tom Fife, by Proxy (Angelo Cappas), and J. Justin Murphy. Nays: None. Motion passed.

*Id.* at 75. The members of ThruPort executed a "Ratification" which stated: "We, the undersigned Members, or assignees thereof, have read these Minutes of the Special Meeting held on April 13, 2014 and do hereby approve, ratify and confirm all business transacted as reported herein." *Id.* at 106.

[5] Also on April 13, 2014,[2] Cappas and ThruPort executed a handwritten agreement which provided:

> Whereas, Angelo Cappas has agreed to extend repayment of a certain promissory note, dated October 31, 2013;
>
> Whereas, Gino Burelli and Robert Parks have executed a Guaranty to induce Angelo Cappas to extend said loan;
>
> Whereas, Angelo Cappas has requested if the [Shell land[3]] is purchased that he [receive] his entire $170,000 loan from [ThruPort] and that his money be returned in full before any other debts or obligations of the company.
>
> Now, Therefore[, ThruPort] agrees if the [Shell land] is financed and purchased that Angelo Cappas shall receive his entire $170,000 loan in full before any other debts or obligations.

*Id.* at 81-82.

---

[2] The date of the agreement in the record is illegible, but ThruPort's counsel stated at the March 12, 2015 hearing that the agreement was dated April 13, 2014.

[3] These words appear to state "Shell land." Appellant's Appendix at 81-82.

In an amended complaint filed with the court on November 6, 2014,[4] under Count I Cappas requested a declaration that his withdrawal from ThruPort was improper under Ind. Code § 23-18-6-6.1;[5] alleged that, if the withdrawal was proper, ThruPort violated the terms of Section 12 of ThruPort's operating agreement and should purchase his membership interest in an amount which could reasonably be expected to be realized upon the sale of company property; and requested the court to direct ThruPort to re-issue his units to him. Under Count II, Cappas requested an order directing ThruPort to open its books to determine whether any debts or obligations had been paid and for an order directing ThruPort not to pay any creditors, vendors or anyone else until the October 31, 2013 promissory note has been paid in full.

Among other motions, Cappas and ThruPort filed cross-motions for summary judgment. The designated evidence includes portions of ThruPort's operating agreement. Additionally, ThruPort's designated evidence includes an affidavit of Murphy which states in part that he is the managing member of ThruPort; that on April 13, 2014, ThruPort was without any assets; that ThruPort did not pay Cappas for his units of interest in ThruPort because his units of interest

---

[4] The initial complaint, filed on September 5, 2014, according to the chronological case summary, is not included in the record. The court later denied a motion by Cappas to file a second amended complaint.

[5] Ind. Code § 23-18-6-6.1 provides in part:

> Unless otherwise provided in a written operating agreement, a member may not withdraw from a limited liability company before the dissolution and winding up of the limited liability company. A member may withdraw from a limited liability company only at the time or upon the occurrence of events specified in the operating agreement and in accordance with the operating agreement.

were without value at the time of Cappas's transfer of the same to ThruPort; that on April 13, 2014, the only figures on the balance sheet of ThruPort were liabilities, which were in the form of expenses owed for consulting services and matters collateral to ThruPort operations; and that, while Cappas was a Member of ThruPort, Cappas received copies of ThruPort's records and, since withdrawing as a member on April 13, 2014, Cappas has never made a demand on ThruPort to review or make copies of its records.

[8] In an affidavit file-stamped January 20, 2015, Cappas states that, at the April 13, 2014 meeting of the members of ThruPort, he signed the minutes of the meeting and a ratification; that Murphy told him that if he did not sign those documents he would never receive any of his money back from ThruPort; and that he felt intimidated and felt he had to sign the documents to have any chance of having his money returned to him. In an affidavit acknowledged on February 16, 2015, Cappas stated that ThruPort did not comply with the requirements of Sections 10.01, 10.02, 10.04, 10.06, 10.08, or 10.10 of its operating agreement.

[9] On March 12, 2015, the court held a hearing at which ThruPort argued that the transfer of Cappas's membership interest was governed by Article 10, not Article 12, of its operating agreement, and that it complied with Article 10.[6]

---

[6] Article 12 of ThruPort's operating agreement relates to events of default on the part of a member and the elections of the non-defaulting members upon the occurrence of an event of default, and Article 10 relates to the sale or transfer of a membership interest.

The court entered summary judgment in favor of ThruPort and against Cappas, finding no genuine issue of material fact that Cappas terminated his interest in ThruPort as per the terms of the operating agreement, and that there is no right of a member who has terminated his interest in a limited liability company to inspect records of the company that were created after the termination of the member's interest. Cappas filed a motion to correct errors, which, after a hearing, the court denied.

## Discussion

[10] The issue is whether the trial court erred in entering summary judgment in favor of ThruPort and against Cappas. Our standard of review is the same as it is for the trial court. *Manley v. Sherer*, 992 N.E.2d 670, 673 (Ind. 2013). The moving party bears the initial burden of making a *prima facie* showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *Id.* Summary judgment is improper if the moving party fails to carry its burden, but if it succeeds, then the nonmoving party must come forward with evidence establishing the existence of a genuine issue of material fact. *Id.* We construe all factual inferences in favor of the nonmoving party and resolve all doubts as to the existence of a material issue against the moving party. *Id.* An appellate court reviewing a challenged trial court summary judgment ruling is limited to the designated evidence before the trial court, but is constrained to neither the claims and arguments presented at trial nor the rationale of the trial court ruling. *Id.* The fact that the parties make cross-

motions for summary judgment does not alter our standard of review. *Huntington v. Riggs*, 862 N.E.2d 1263, 1266 (Ind. Ct. App. 2007), *trans. denied*.

[11] Cappas claims that his withdrawal from ThruPort is void because ThruPort did not follow the terms of its operating agreement. He cites or refers to portions of Section 10.01(C), (E), and (F), and Sections 10.02, 10.04, 10.06, 10.08, and 10.10, and notes that his affidavit which stated that ThruPort did not comply with the requirements of these sections and that the minutes of the April 13, 2014 meeting do not contain any notations that Article 10 was followed.[7]

[12] ThruPort maintains that Cappas transferred his membership interest in accordance with the terms of the operating agreement. It argues that Cappas ratified the minutes memorializing the transfer and that his letter to Murphy stated that the transfer was made pursuant to Section 10.01(E)(4) of the operating agreement. It notes that Cappas does not argue that Section 10.06 was not followed because he was not paid, and contends that Murphy's affidavit makes it clear that ThruPort was insolvent at the time of the transfer, and that this was the very reason Cappas transferred his membership interest, namely, in order to facilitate locating alternative financing.

---

[7] Cappas does not present arguments related to Article 12 of the operating agreement or to Count II of his amended complaint. He does not claim the transfer of his membership interest was the result of, or connected to, an event of default under Article 12, and further, in his letter to Murphy, he referenced Section 10.01(E)(4) of Article 10, and the term "Disposition" defined in the operating agreement and addressed in Article 10, indicating he intended to transfer his membership interest pursuant to Article 10 of the operating agreement.

[13] Article 10 of ThruPort's operating agreement governs the sale or transfer of membership interests in the company. Section 10.01 addresses restrictions on transfer, and Section 10.01(A) provides in part that "[n]o Membership Interest may be transferred except by the unanimous written consent of the non-transferring Members, and then only in accordance with this Article 10." Appellant's Appendix at 90. Section 10.01(E) provides in part that "[t]he Company may not recognize for any purpose any purported Disposition[8] of all or part of a Membership Interest unless and until the other applicable provisions of this Section have been satisfied" and the company has received "a document (i) executed by both the Member effecting the Disposition . . . and the Person to which the Membership Interest or part thereof is Disposed, (ii) including the notice address of any Person to be admitted to the Company as a Member," "(iii) setting forth the Sharing Ratios and the Commitments after the Disposition of the Member effecting the Disposition and the Person to which the Membership Interest or part thereof is Disposed (which together must total the Sharing Ratio and the Commitment of the Member effecting the Disposition before the Disposition)," and "(iv) containing a representation and warranty that the Disposition was made in accordance with all applicable laws and regulations (including securities laws) . . . ." *Id.* at 90-91. Section 10.01(F) provides in part that, for the right of a member to Dispose of a membership

---

[8] The operating agreement provides that "'Disposition (Dispose)' means any sale, assignment, transfer, exchange, mortgage, pledge, grant, hypothecation, or other transfer, absolute or as security or encumbrance (including dispositions by operation of law)." Appellant's Appendix at 77.

interest, either the membership interest subject to the Disposition must be registered under the Securities Act of 1933 as amended and any applicable state securities laws or the company must receive a favorable opinion of the company's legal counsel to the effect that the Disposition is exempt from registration under those laws, but that the managers may waive the requirements of Section 10.01(F).

[14] Section 10.02 relates to an offer to purchase made by a person not a party to the operating agreement. Section 10.03 relates to the purchase of a member's interest by the company upon the bankruptcy, insolvency, death, or disability of the member or the appointment of a receiver of the member's assets. Section 10.04 provides in part that, "[i]n the event of the purchase of an interest by the Company pursuant to Section 10.03, or sale of a Membership Interest without a third party bona fide offer," the purchase price would be determined based in part on the most recent certificate of value or, if unavailable, an appraisal. *Id.* at 95. Section 10.06 provides terms related to the payment of the purchase price, and Section 10.08 relates to a closing of a purchase of a membership interest. Section 10.10 provides in part that "[s]trict compliance shall be required with each and every provision of this Article, it being understood and agreed that no Member shall, as set forth in Section 10.01 hereof, have the right or power to sell or assign any of his Membership Interest except in strict compliance with the procedures set forth in this Article." *Id.* at 98.

[15] In his letter to Murphy, Cappas stated that he was confirming his willingness to withdraw as a member of the company and surrender his units of membership

"back to the company to facilitate locating alternative financing for the project" and that, "[p]ursuant to Section 10.01(E)(4), I represent and warranty [sic] that the Disposition is made in accordance with all applicable laws and regulations (including security laws)." *Id.* at 101. The minutes of the April 13, 2014 meeting of the members provide in part that Cappas reported that "he was unable to provide project funding," that he was willing to withdraw as a member of the company and to surrender "all of his units of membership back to the company for such reason in order to facilitate locating alternative financing," and that a motion to approve his transfer of units back to the company and accept his resignation passed by unanimous vote. *Id.* at 75.

[16] These documents, taken together, satisfied the requirements of Section 10.01 of ThruPort's operating agreement related to the transfer of a member's interest in the company. The transfer of Cappas's membership interest was approved by the unanimous written consent of the non-transferring members under Section 10.01(A), and Cappas executed a document effecting the transfer under Section 10.01(E). He also provided his specific representation and warranty that the disposition or transfer was made in accordance with Section 10.01(E)(iv),[9] and, in agreeing to the transfer, the members, including Cappas and Murphy as the manager, waived the requirements of Section 10.01(F). Section 10.02 is

---

[9] Cappas does not specifically argue that Section 10.01(E)(iii), which relates to a document setting forth a member's Sharing Ratio and Commitments after a Disposition, is applicable or has any effect as, after the transfer, he has no membership interest. His letter to Murphy and the minutes of the April 13, 2014 meeting indicate that he transferred the entirety of his interest to ThruPort.

inapplicable as there was not a third party offer to purchase his interest, and Section 10.03 is inapplicable as ThruPort did not purchase his interest due to his bankruptcy, insolvency, death, or disability, or the appointment of a receiver of his assets. Cappas does not specifically argue that there was a sale of his membership interest without a third party offer for purposes of Sections 10.04, 10.06, and 10.08. Further, Murphy's affidavit states that, on April 13, 2014, ThruPort was without any assets, that ThruPort did not pay Cappas for his units of interest because the units did not have value at the time of the transfer, and that the only figures on the balance sheet at the time were certain liabilities. Finally, we observe that Cappas together with the members of ThruPort specifically ratified the transfer of his membership interest at the April 13, 2014 meeting of members.

[17] Based upon the designated evidence, we conclude that Cappas transferred his membership interest to ThruPort consistent with the provisions of the company's operating agreement. Accordingly, the trial court did not err in entering summary judgment in favor of ThruPort and in rejecting Cappas's request for the court to direct ThruPort to re-issue his previously-held membership interest to him.

## *Conclusion*

[18] For the foregoing reasons, we affirm the trial court's entry of summary judgment in favor of ThruPort on Cappas's claims.

[19] Affirmed.

Kirsch, J., and Mathias, J., concur.